IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DIVISION OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **JANET PRIM and ERIC RIM,** | )( | Civil Action No.:4:18-cv-1774 |
| | )( | |
| *Plaintiffs,* | )( | |
| | )( | |
| V. | )( | **JURY TRIAL** |
| | )( | |
| **MONTGOMERY COUNTY, TEXAS,** | )( | |
| **DEPUTY STEIN,** *Individually,* | )( | |
| **LIEUTENANT WEBB,** *Individually,* | )( | |
| **DETECTIVE TERRELL,** *Individually,* | )( | |
| **THE CENTER FOR THE** | )( | |
| **PERFORMING ARTS AT THE** | )( | |
| **WOODLANDS, and** | )( | |
| **JOHN HARSHAW,** *Individually,* | )( | |
| | )( | |
| *Defendants.* | )( | |

## PLAINTIFFS' ORIGINAL COMPLAINT

**NOW COME** Plaintiffs JANET PRIM and ERIC PRIM complaining of Montgomery County, Texas, Deputy Stein, Individually, Lieutenant Webb, Individually, Detective Terrell, Individually, The Center for the Performing Arts at The Woodlands, and John Harshaw, Individually, and will show the Court the following:

## NUTSHELL

1. Eric, 59, and Janet Prim, 57, had never been arrested their entire lives. They were enjoying a concert at the Cynthia Woods Mitchell Pavilion ("CWMP") June 18, 2017. Janet began to exhibit symptoms of her 20-year battle with multiple sclerosis ("MS") so Eric, her primary caregiver and husband, escorted her through the Pavilion so they could walk home. Janet stumbled due to her MS and a CWMP employee, John Harshaw, saw her stumble and investigated. The Prims told Harshaw she had MS and that was why Janet was unsteady. Despite this, CWMP employees grabbed plaintiffs against their wishes and forced them to a secluded room alleging public intoxication. Eric and Janet were not

Page | 1

intoxicated.  The multiple sclerosis was explained to the employees by Janet and Eric at the scene several times, but the employees summoned Montgomery County Sheriff Deputies to arrest them. Plaintiffs also explained to the deputies that Janet suffers from multiple sclerosis and described its symptoms, but the deputies chose to arrest Janet and Eric despite being made aware of Janet's disability and its associated symptoms.

2. Plaintiffs sue under the Americans with Disabilities Act, 42 USC Section 1983, and state law claims of false imprisonment, assault with offensive bodily contact, negligence, and intentional infliction of emotional distress.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over Plaintiffs' federal claims, under 28 U.S.C. § 1331, 42 U.S.C. §§ 1983 and 1988, and supplemental jurisdiction, under 28 U.S.C. § 1367(a), to hear Plaintiffs' state law claims.

4. Venue is proper in this Court, under 28 U.S.C. § 1391(b), because the incident at issue took place in Montgomery County, Texas, within the United States Southern District of Texas.

## PARTIES

5. Plaintiff Janet Prim is a resident of Montgomery County, Texas.

6. Plaintiff Eric Prim is a resident of Montgomery County, Texas.

7. Defendant Montgomery County, Texas is a governmental unit existing within the U.S. Southern District of Texas and can be served with process by serving the County Judge of Montgomery County, Texas at 501 North Thompson Street, #401, Conroe, TX, 77301.

8. Defendant Stein, ("Deputy Stein") Individually, at all times relevant was a Montgomery County Sheriff's deputy who can be served with process at 1 Criminal Justice Drive, Conroe, Texas or in person wherever he is found.

9. Defendant Webb, ("Lieutenant Webb") Individually, at all times relevant was a Montgomery County Sheriff's deputy who can be served with process at 1 Criminal Justice Drive, Conroe, Texas or in person wherever he is found.

10. Defendant Terrell, ("Deputy Terrell") Individually, at all times relevant was a Montgomery County Sheriff's deputy who can be served with process at 1 Criminal Justice Drive, Conroe, Texas or in person wherever he is found.

11. Defendant The Center for the Performing Arts at The Woodlands is a business entity responsible for the Cynthia Woods Mitchell Pavilion, existing within the Southern District of Texas and can be served with process by serving Gerald B. McDonald at 2005 Lake Robbins Drive, The Woodlands, Texas 77380.

12. Defendant, John Harshaw, ("Harshaw") Individually, at all times relevant was an employee of The Center for the Performing Arts at The Woodlands and can be served with process at 3515 Walnut Forest Court, Spring, Texas 77388, or in person wherever he is found.

## FACTS

13. Janet Prim ("Janet") is 57 years old and has never been convicted of a crime in her life.

14. Eric Prim ("Eric") is 59 years old and has never been convicted of a crime in his life. Eric has never even received a single traffic ticket.

15. In 1987, at the age of 28, Janet was diagnosed with multiple sclerosis. Multiple sclerosis (MS) is a common and a demyelinating disease (any disease of the nervous system in which the myelin sheath of neurons is damaged) in which the insulating covers of nerve cells in the brain and spinal cord are damaged. This damage disrupts the ability of parts of the nervous system to communicate, resulting in a range of signs and symptoms, including physical, mental, and sometimes psychiatric problems. Specific symptoms can include, but are not limited to: tremor, lack of coordination or unsteady gait, slurred speech, fatigue, dizziness, numbness or weakness in one or more limbs that typically occurs on

one side of the body at a time, or the legs and trunk, partial or complete loss of vision, usually in one eye at a time, often with pain during eye movement, prolonged double vision, tingling or pain in parts of the body, electric-shock sensations that occur with certain neck movements, especially bending the neck forward, and problems with bowel and bladder function. MS takes several forms, with new symptoms either occurring in isolated attacks (relapsing forms) or building up over time (progressive forms). Between attacks, symptoms may disappear completely; however, permanent neurological problems often remain, especially as the disease advances. There is currently no known cure for MS, and life expectancy for sufferers of MS is, on average, five to ten years shorter than that of the unaffected population.

16. Janet's specific symptoms include, but are not limited to unsteady gait, lack of coordination, mental confusion, vision loss, fatigue, dizziness, temporary losses of feeling in extremities, and a permanent loss of feeling in her left hand. Some of these symptoms are made worse when Janet is under stress and/or when tired at night. Janet suffered an MS-related stroke in 2013. Janet is not able to drive or work due to limitations to her sight and balance caused by MS. Janet is legally blind to the point of being unable to even see her own two feet clearly, which adds to her stumbling. Janet's right iris does not dilate, making high contrasts between light and dark particularly disorienting and blinding due to her inability to quickly adjust to changes in light levels. Janet's neurologist recently prescribed physical therapy to assist Janet with her balance. Eric is Janet's primary caretaker when she travels outside of the home. He assists her with mobility due to her blindness and limited coordination.

17. Sight impaired individuals often require assistance outside of the home, which can come from caretakers, service animals, or support canes. This is especially true in new spaces, public spaces, and crowded spaces, where the likelihood of encountering unfamiliar obstacles increases. Uneven surfaces, unevenly spaced steps, and winding walkways (all of which are present at the CWMP) create additional difficulty for the average sight impaired person, even before factoring in all of the additional difficulties Janet experiences as a result of her MS. The high contrast of spotlights, strobes, and other

light effects typically used in performances at the CWMP make it particularly difficult for Janet's eyes to adjust to the environment, rendering her blindness even worse than usual.

18. Janet and Eric are well-versed in explaining the symptoms of MS to strangers, as they have been doing so for approximately thirty years.

19. On the night of June 18, 2017, Janet and Eric were attending a concert at the Cynthia Woods Mitchell Pavilion, a performance venue owned and operated by The Center for the Performing Arts at The Woodlands, located at 2005 Lake Robbins Drive, The Woodlands, Texas 77380.

20. As Janet and Eric were leaving, Janet stumbled on an unfamiliar surface, a common symptom of her disability, and had to be assisted by Eric. The couple was then detained by John Harshaw, a security guard employed by The Center for the Performing Arts at The Woodlands. Harshaw insisted that Janet and Eric were drunk and attempted to force Janet and Eric to come with him to the security office located on the venue's premises. Eric explained that Janet's stumbling was a common symptom of her MS. When Janet and Eric insisted on being allowed to leave, Harshaw aggressively grabbed Eric and physically forced him to go to the security office against his will. Harshaw then forced Janet into a wheelchair and brought her to the security office, also against her will. Eric repeatedly asked to be allowed to call his son, who is an attorney, but Harshaw refused to allow this. Eric and Janet also asked if they could be released into the care of others (Eric's coworkers and clients) with whom they had attended the concert that night and who were still there but were again refused. By Harshaw.

21. While being detained against her will at the security office, Janet was inspected by Charles Tatom, a medic employed by The Center for the Performing Arts at The Woodlands. Eric and Janet explained to Tatom that Janet's stumbling and lack of coordination were symptoms of her disability.

22. Harshaw summoned Montgomery County Sheriff's deputies to the security office. Deputies Stein and Terrell, as well as Lieutenant Webb, working off duty as security for The Center for the Performing Arts at The Woodlands, arrived at the security office. Tatom explained to Webb that Janet

had slurred speech, and characterized her responses to his questions as inappropriate, ignoring Janet and Eric's insistence that Janet suffers from MS as well as their continued explanations of Janet's symptoms.

23. Deputy Stein and Lieutenant Webb were both told by Janet and Eric that Janet suffers from MS, and that her symptoms included unsteady gait, lack of coordination, tremors, and slurred speech. Eric requested that a breath analysis be performed so as to prove that he and Janet were not drunk, but this request was refused by Deputy Stein. Instead, Deputy Stein performed a Horizontal Gaze Nystagmus ("HGN") test on Eric. Eric was confused by the instructions and was unable to complete the test initially but was not allowed to perform the test once he understood the instructions. Eric again requested a breath analysis test or some other method of accurately determining his blood alcohol content ("BAC") level, but this request was again refused. Janet was never given a BAC test or any other test to determine if she was in any way intoxicated.

24. Eric again asked if he and Janet could call their son, an attorney, to explain the situation. They were told no. Eric asked if they could be released into the care of others (Eric's coworkers and clients) with whom they had attended the concert that night and who were still there. This option was also refused by the deputies. Instead, they were arrested and charged with public intoxication, a crime.

25. They were then handcuffed and taken to the county jail.

26. Janet was separated from her husband and made to undress in front of jail staff. Her clothes were taken, and she was forced to wear the jail's underwear, shirt, pants, and foam clog shoes. She was not even permitted to keep her hair tie. She was forced to remove her bra and all of her jewelry, including a ring that was difficult to remove from her finger. As Janet struggled to remove the ring, a jail guard threatened that if Janet did not remove the ring herself, it would be removed by a guard. Janet was frightened by this comment, and despite her inability to see their facial expressions, she was very aware of an unnecessary amount of hostility directed at her by the guard. Her lack of vision only heightened her fear.

27. Because Janet's symptoms can flare when she is under stress, the experience of being arrested and imprisoned made walking even more difficult than usual for her. This was compounded by the effects of sleep deprivation, as Janet was kept awake many hours past when she normally goes to sleep. She could not walk upright when she was led to a holding cell. Janet explained several times to the jail personnel that she could not see or stand upright due to her MS, but she was given no assistance. Janet later learned that jail staff had told Eric that Janet would be taken to an onsite doctor for care, but this was never done.

28. Mrs. Prim sat in a holding cell for approximately eight hours.

29. During that time, she only used the restroom once, during a five-minute period when she felt that she had sufficient privacy because her cellmate was taken out for booking. When another woman in a holding cell asked for water, she was told to use the sink. In the jail, the sink and toilet are a single fixture, with the sink located where the tank is on traditional household toilets. Janet was frightened of the response and felt concerned about the unsanitary nature of drinking from a sink that was on the tank of a toilet. Janet was afraid to eat, and she neither drank nor slept while in the jail. She cried and waited, hoping to be released, but having no idea when this would happen.

30. Janet eventually was able to remember her son's phone number, but when she attempted to use the phone in the holding cell, she found that the phone was not functioning. She was increasingly afraid that no one would be available to help her when she was eventually released. Fortunately, her son and his wife had received several increasingly panicked voice mails from Eric, who was eventually able to remember their phone numbers.

31. Janet Prim's son arrived at the jail just before six o'clock in the morning on Monday, June 19, 2017. Over the phone, he was told by an employee of the Montgomery County Sheriff's Department that Janet would be released in four hours but was made to wait a total of eight hours before she was released.

32. Before being released, Janet was once again forced to change her clothes in front of a guard, who threw a trash bag containing her clothes at Janet. Janet was then forced to sign documents that she could not read due to her impaired vision. She asked for assistance in understanding what she was signing, but the guards angrily refused to help or read the form to her. Janet had not been given any notification from her husband or son, so she expressed to the guards that she was concerned that no one would be available to assist her when she was released. The guard told her that there was a phone in the waiting area, and refused to assist her, despite her explanation of the difficulties created by her MS symptoms.

33. Janet and her son were made to wait in a waiting area for Eric to be released. There were padded chairs present, but they were forced to sit on a hard bench, despite Janet's explanation that she was experiencing pain and needed a comfortable place to sit.

34. Janet was affected physically by the discriminatory arrest and detention. While in the jail, she badly scratched her shoulder and hit her head on the wall when she lost her balance, despite repeated requests for assistance and attempts to explain that she suffers from multiple sclerosis. Janet also suffered severe back and abdominal pain because of stress-induced muscle spasms. This pain was intensified by her long wait on the hard benches. Her lack of sleep also caused extreme fatigue which was magnified by her multiple sclerosis.

35. Janet was also impacted emotionally by this experience. Janet no longer fears leaving her home. When and if she does, she experiences constant anxiety, fearing that an unexpected flare up of her symptoms will result in her being arrested and imprisoned again. Janet does not sleep well after the incident. Waking up in the early hours of the morning, she is forced to relive the events in the form of recurring nightmares nearly every time she is able to sleep. For some time following the arrest, Janet would daily check local websites, blogs, and newspapers, consumed with fear that her friends and neighbors would be exposed to her mug shot.

36. A complaint was filed with the Montgomery County Sheriff's Office and was investigated internally. After reviewing the evidence presented, the department determined that no policy was violated during the interaction with Janet and Eric.

37. On or about September 18, 2013, Montgomery County Sheriff Deputies Curry and Veith wrongfully arrested, attacked, and injured Tandra Baker during a routine wellness check related to Baker's special needs. As a result of the deputies' actions, Baker was forced to endure approximately 16 seizures that night alone. Mrs. Baker suffered severe pain and sought medical treatment for her broken jaw, broken teeth, hips, PTSD, lower back, neck, shoulders, seizures, sleeping disorders, left breast, index finger, scarring to her face and mouth, anxiety, headaches, nausea, depression, abdominal pain, ear pain accompanied by ringing, chest pain, fatigue, numbness in her extremities, loss of balance, weight change and sore throat. The injuries include: 1) Trauma to her left breast; 2) severe seizures; 3) extreme pain in her lower back, hip, neck and index finger; 4) broken jaw and teeth; and 5) emotional and mental issues stemming from the deputies' actions and subsequent criminal proceedings.

38. On or about August 8, 2004, Montgomery County Sheriff's Deputy W. B. Rogers wrongfully arrested and beat a five-foot one-inch tall pregnant woman, Shavon Bass, during a routine traffic stop. All charges against her were dismissed shortly after.

## CAUSES OF ACTION

## DEFENDANT MONTGOMERY COUNTY AND THE INDIVIDUAL DEPUTIES

## 42 U.S.C. §1983: FOURTH AMENDMENT VIOLATIONS

## FALSE ARREST

39. Plaintiff reasserts all previous paragraphs as if fully set forth herein.

40. The Fourth Amendment guarantees everyone the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *U.S. Const. amend. IV*. Fourth Amendment violation are actionable under 42 U.S.C. Section 1983.

41. Defendant Montgomery County and individual defendant deputies violated Janet and Eric's Fourth Amendment and Fourteenth Amendments rights, at least, when they were searched and detained them without probable cause or reasonable suspicion and arrested and falsely prosecuted with malice without probable cause. The charges were dismissed and ended in their favor without any fine or other obligation.

42. Defendant County and Individual deputies arrested Janet and Eric without a warrant and without probable cause in violation of their clearly established rights.

43. Defendant County and Individual deputies had no objectively reasonable belief that the arrest was lawful. The facts and circumstances as described above would not lead a prudent person to believe that an offense had been committed. The totality of circumstances in this case, viewed from the standpoint of an objectively reasonable police officer, would not and did not amount to probable cause.

44. The charges against Janet and Eric were determined to lack merit and were quickly dropped.

45. Defendant County did not have adequate written policies, or train or supervise the deputies properly such that they arrested Janet without any probable cause because she suffered from MS. Lieutenant Webb, being the senior ranking deputy present, acted in a supervisory capacity in allowing and participating in the false arrest of Janet and Eric.

46. Defendant County clearly condoned and ratified the actions of the Defendant Deputies by allowing the arrest and subsequent detention to take place despite having full knowledge of the facts and circumstances surrounding the situation. The deliberately indifferent training and supervision was a direct and proximate cause of the deprivation of Janet and Eric's federally protected rights. As such, the execution of official policy caused the constitutional violations.

47. Defendant County determined that there was no violation of policy in the interaction with Janet and Eric thereby ratifying the deputies' Unconstitutional behavior.

48. Defendant County already has established a pattern and practice of arresting people without probable cause.

## 42 U.S.C. § 12131-12134, 12182: AMERICANS WITH DISABILITIES ACT

49. Plaintiff reasserts all previous paragraphs as if fully set forth herein.

50. Montgomery County Sheriff's Department and the Center for the Performing Arts at The Woodlands violated Title II of the ADA (42 U.S.C. §12131-12134, 12131(2), 12182) and Section 504 of the Rehabilitation Act (29 U.S.C. §794).

51. Title II of the ADA applies to the County. Title II affirmatively requires that governmental agencies modify and accommodate their practices, policies, and procedures as necessary to avoid discriminating against individuals with disabilities.

52. Further, Montgomery County has been, and is, a recipient of federal funds. Thus, Montgomery County must comply with Section 504's mandate. Section 504 requires that federal money recipients reasonably accommodate persons with disabilities in their program activities and services and reasonably modify such services and programs to accomplish this purpose.

53. The County is a public entity and its law enforcement department qualifies as a program and service for purposes of Title II of the ADA and Section 504

54. The County violated Title H of the ADA and Section 504 by:

   a. Failing and refusing to reasonably modify and accommodate sheriff department operations and services for Janet Prim, which would include avoiding arresting people for displaying symptoms of multiple sclerosis and educating and training officers in the care of disabled persons. The County and its sheriff department made none of these modifications and accommodations;

   b. Failing and refusing to adopt a policy to protect the well-being of people like Janet, persons with disabilities such as multiple sclerosis;

      c. Discriminating against Janet, as a sufferer of multiple sclerosis, in the provision of services by the County's sheriff department, on the basis of her disability, by not accommodating her needs related to her disability; and,

      d. Failing to conduct a self-evaluation plan under the ADA and Section 504, and then failing to modify its programs and services to accommodate the needs of persons with mental disabilities, such as Janet, when called upon to provide service.

55. Plaintiffs seek damages, as well as declaratory and injunctive relief, under the ADA and Section 504.

## DEFENDANTS THE CENTER FOR THE PERFORMING ARTS AT THE WOODLANDS AND JOHN HARSHAW

## FALSE IMPRISONMENT

56. Plaintiff reasserts all previous paragraphs as if fully set forth herein.

57. The elements of false imprisonment are the following: (1) the defendant willfully detained the plaintiff, (2) the detention was without the plaintiff's consent, and (3) the detention was without legal authority or justification. *Wal-Mart Stores v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002).

58. Defendant John Harshaw willfully detained Eric and Janet Prim as they were leaving the Center for the Performing Arts at The Woodlands. Harshaw is an agent of The Center for the Performing Arts at The Woodlands and was acting as an employee of the Center for the Performing Arts at The Woodlands before, during, and after Harshaw's false imprisonment of Eric and Janet. Liability for false imprisonment can extend to (1) anyone who unlawfully arrests or detains another and (2) anyone who directs, requests, or participates in the arrest or detention. *Rodriguez*, 92 S.W.3d at 507. This extends liability to any employees of the Center for the Performing Arts at The Woodlands who participated in or directed the false imprisonment of Eric and Janet, as well as extending vicarious liability to the employer, the Center for the Performing Arts at The Woodlands for wrongful detention or arrest made by

an employee or agent acting within the scope of employment. *Wal-Mart Stores v. Odem*, 929 S.W.2d 513, 530 n.9 (Tex.App.-San Antonio 1996, writ denied). In order to impose liability upon an employer for the tort of its employee under the doctrine of respondeat superior, the act of the employee must fall within the scope of the general authority of the employee and must be in furtherance of the employer's business for the accomplishment of the object for which the employee was hired. *Dieter v. Baker Serv. Tools*, 739 S.W.2d 405 (Tex.App.—Corpus Christi 1987, writ denied).

59. The detention of Eric and Janet was without their consent. Eric stated to Harshaw that the couple intended to leave, and Harshaw used physical force to detain Eric. Due to the symptoms of her multiple sclerosis, Janet was unable to leave without assistance from Eric and was therefore also detained against her will.

60. Defendant Harshaw had no legal authority to arrest or detain Eric or Janet. Harshaw is not a licensed peace officer, nor did he have any legal justification to detain Eric or Janet.

61. Damages recoverable in a false imprisonment claim include physical injuries as well as intangible injuries such as humiliation, shame, fright, and mental anguish. *Wal-Mart Stores v. Odem*, 929 S.W.2d 513, 527 (Tex.App.-San Antonio 1996, writ denied).

62. Defendant Harshaw was acting as a security guard for the Center for the Performing Arts at The Woodlands during the entirety of the exchange with Janet and Eric Prim.

63. Plaintiffs seek actual damages for humiliation, shame, fright, and mental anguish arising from false imprisonment as well as attorney fees stemming from defending against false arrest. *Eans v. Grocer Sup. Co.*, 580 S.W.2d 17, 23 (Tex.App-Houston [1st Dist.] 1979, no writ). Plaintiffs also seek damages from The Center for the Performing Arts at The Woodlands under a theory of respondeat superior.

## ASSAULT BY OFFENSIVE PHYSICAL CONTACT

64. Plaintiff reasserts all previous paragraphs as if fully set forth herein.

65. The elements of a cause of action for assault by offensive physical contact are the following: (1) the defendant acted intentionally or knowingly, (2) the defendant made contact with the plaintiff's person, and (3) the defendant knew or reasonably should have believed that the plaintiff would regard the contact as offensive or provocative. Tex. Pen. Code §22.01(a)(3). The basis for an action for assault by offensive physical contact is the unpermitted or intentional invasion of the plaintiff's person, not the harm done to the plaintiff's body. *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627, 630 (Tex.1967). In an action for assault by offensive physical contact, the plaintiff can recover actual damages for mental anguish even without showing physical injury. *Id*. In order to impose liability upon an employer for the tort of its employee under the doctrine of respondeat superior, the act of the employee must fall within the scope of the general authority of the employee and must be in furtherance of the employer's business for the accomplishment of the object for which the employee was hired. *Dieter v. Baker Serv. Tools*, 739 S.W.2d 405 (Tex.App.—Corpus Christi 1987, writ denied).

66. Defendant Harshaw intended to physically restrain Eric Prim and also intended for Janet Prim to be forced into a wheelchair.

67. Defendant Harshaw made physical contact with Eric while restraining him and with Janet while forcing her into a wheelchair.

68. Defendant Harshaw knew or reasonably should have believed that Eric and Janet Prim would regard being physically restrained as offensive or provocative.

69. Defendant Harshaw was acting as a security guard for the Center for the Performing Arts at The Woodlands during the entirety of the exchange with Eric and Janet Prim.

70. Plaintiffs seek actual damages for assault by offensive physical contact from Defendant Harshaw as well as The Center for the Performing Arts at The Woodlands under the doctrine of respondeat superior.

## NEGLIGENCE and GROSS NEGLIGENCE

71. Plaintiff reasserts all previous paragraphs as if fully set forth herein.

72. The elements of a cause of action for negligence are the following: (1) the defendant owed a legal duty to the plaintiff, (2) the defendant breached that duty, and (3) the breach proximately caused plaintiff's injury. *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex.2009). In order to impose liability upon an employer for the tort of its employee under the doctrine of respondeat superior, the act of the employee must fall within the scope of the general authority of the employee and must be in furtherance of the employer's business for the accomplishment of the object for which the employee was hired. *Dieter v. Baker Serv. Tools*, 739 S.W.2d 405 (Tex.App.—Corpus Christi 1987, writ denied).

73. As a security guard employed by The Center for the Performing Arts at The Woodlands, defendant John Harshaw had a duty of ordinary care to not assault or falsely imprison patrons of the Center for the Performing Arts at The Woodlands. Defendant Center for the Performing Arts at the Woodlands had a duty to use ordinary care in supervising and/or training its employees. *Mackey v. U.P. Enters., Inc.*, 935 S.W.2d 446, 453 (Tex.App.-Tyler 1996, no writ).

74. Defendant Harshaw breached this duty by assaulting and falsely imprisoning Eric and Janet Prim as an employee of and while under the supervision of the Center for the Performing Arts at The Woodlands. The Center for the Performing Arts at the Woodlands failed in its duty to use ordinary care in supervising and/or training its employee, John Harshaw, while Harshaw assaulted and falsely imprisoned Eric and Janet Prim.

75. The harm of being assaulted and falsely imprisoned would not have happened, but for Harshaw and The Center for the Performing Arts at The Woodlands' negligent breach.

76. Plaintiffs seek actual damages as well as pre and postjudgment interest and court costs from Defendant Harshaw as well as The Center for the Performing Arts at The Woodlands under the doctrine of respondeat superior.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

77. Plaintiff also claims intentional infliction of emotional distress.

### PUNITIVE DAMAGES

78. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

79. All individuals sued are liable for punitive damages as they were consciously indifferent to the plaintiff's constitutional rights and they did the acts knowingly, such acts being extreme and outrageous and shocking to the conscious.

### ATTORNEY'S FEES

80. The Prims are entitled to recover attorneys' fees and costs to enforce their Constitutional rights and under 42 U.S.C. Sections 1983 and 1988, from Defendants.

### JURY TRIAL

81. The Prims demand trial by jury on all issues triable to a jury.

### PRAYER FOR RELIEF

82. WHEREFORE, Plaintiffs Janet and Eric Prim request that the Court:

A. Enter judgment for Plaintiffs against Montgomery County, The Center for the Performing Arts at The Woodlands, and each and every individually named defendant jointly and severally;

B. Find that Plaintiffs are the prevailing parties in this case and award attorneys' fees and costs, pursuant to federal law, as noted against defendant Montgomery County Sheriff's Department, The Center for the Performing Arts at The Woodlands, and the individually named defendant employees and deputies jointly and severally;

C. Award damages to Plaintiffs for the violations of their Constitutional rights claim;

D. Award Pre- and post-judgement interest;

E. Award Punitive damages against all individually named defendants;

F.	Order Montgomery County and the Center for the Performing Arts at The Woodlands to implement policies and train employees in recognizing MS and accommodating this disability; and

G.	Grant such other and further relief as appears reasonable and just, to which, Plaintiffs shows themselves entitled.


Respectfully Submitted,
KALLINEN LAW PLLC

/S/ Randall L. Kallinen
Randall L. Kallinen
State Bar of Texas No. 00790995
U.S. Southern District of Texas Bar No.: 19417
511 Broadway Street
Houston, Texas 77012
Telephone:	713.320.3785
FAX:	713.893.6737
E-mail:AttorneyKallinen@aol.com
Attorney for Plaintiff